IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| TERESA DAVIS, et al., | : | Case No. 1:25-cv-942 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| SPACE COWBOYS RESTAURANT | : | |
| GROUP, LLC, | : | |
| | : | |
| Defendant. | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 13). Plaintiff filed a Response in Opposition (Doc. 16), to which Defendant filed a Reply in Support (Doc. 17). Thus, this matter is ripe for the Court's review. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion (Doc. 13).

## ALLEGED FACTS

Defendant Space Cowboy Restaurant Group, LLC, operates several Donatos Pizza franchises in the Greater Cincinnati area. (Compl., Doc. 1, ¶ 9.) Plaintiffs Teresa Davis and Candice Mangus (collectively, "Plaintiffs") worked for Defendant, and its predecessors, for over twenty years—Davis for nearly twenty-five years and Mangus for about twenty-six years. (*Id.* at ¶ 10.) Both Plaintiffs are over forty years old, and both are female. (*Id.* at ¶ 13.)

In March 2023, Defendant acquired numerous Donatos stores. (Compl., Doc. 1, ¶

14.) After this acquisition, Mangus, who was the human resources employee for Defendant, noticed "numerous wrongful employment policies and actions," including violations of Defendant's handbook policies and unlawful employment actions. (*Id.* at ¶ 15.) As examples, Mangus complained to management that employees' pay was reduced without reason, notice, or explanation; additionally, Mangus alerted management, including the CEO Bill Aseere, that Defendant was employing minors in violation of Ohio law, and was not properly paying overtime, in violation of both Ohio law and the Fair Labor Standards Act ("FLSA"). (*Id.* at ¶¶ 16-17.) Mangus claims that these concerns "fell on deaf ears" and that Aseere "became irritated when Mangus would raise these concerns." (*Id.* at ¶ 17.) Additionally, Mangus expressed concerns that younger, male employees were replacing older, female employees, but again claims that these complaints "fell on deaf ears." (*Id.* at ¶ 18.)

At one point during Davis's employment, she required leave under the Family and Medical Leave Act ("FMLA"). (Compl., Doc. 1, ¶ 19.) Mangus claims that she timely submitted the paperwork for this leave. (*Id.*) However, Defendant later indicated that it did not have this paperwork, to which Mangus replied that she submitted it; Defendant later approved the leave. (*Id.*) According to Plaintiffs, though, Defendant's management, which included both CEO Aseere and Jayson Aseere, "expressed disdain" for Davis's medical conditions and associated leave. (*Id.* at ¶ 20.) Plaintiffs claim that management criticized and complained about Davis behind her back, including comments to district managers that Defendant "did not want to or would not be bringing Davis back after her FMLA leave," because she had taken the leave and/or because of her disability. (*Id.* at ¶

21.) At this time, Davis was working in a supervisory capacity. (*Id.*) And, soon after she returned from leave, in December 2024, Defendant terminated her employment. (*Id.* at ¶ 22.)

Meanwhile, Mangus remained in her HR role at the time of Davis's termination; while she states that normally she would have been a part of the termination process, she notes that she "was suspiciously siloed away from it." (Compl., Doc. 1, ¶ 23.) Nevertheless, Mangus began to prepare a response to a request from Ohio Department of Job and Family Services ("ODJFS") for information with respect to Davis's unemployment benefits application. (*Id.* at ¶ 24.) However, Mangus states that, when she sought information from Defendant about Davis's termination, Defendant ignored her. (*Id.*) Moreover, just a few weeks after Davis's termination, Defendant terminated Mangus. (*Id.* at ¶ 25.) Her termination came "just before the response to ODJFS was due." (*Id.*) As reason for her termination, Defendant told Mangus that her job was being eliminated and outsourced. (*Id.* at ¶ 26.) But it then shifted its justification, claiming that poor performance led to her termination.[1] (*Id.*)

In sum, Plaintiffs allege that Defendant wrongfully terminated both of them. (Compl., Doc. 1, ¶¶ 28-29.) Davis claims that Defendant unlawfully terminated her because of her disability, her seeking and taking FMLA leave, and because of her age and gender. (*Id.* at ¶ 28.) Meanwhile, Mangus alleges that Defendant unlawfully terminated

---

[1] The Complaint states that "Space Cowboys shifted its justification, alleging that Davis was actually instead terminated for poor performance." However, based on the context of the paragraph, which begins with Defendant's justification for Mangus' termination, the Court believes this is scrivener's error and should read "Mangus" instead of "Davis."

her in retaliation for the role she played in Davis's FMLA leave, in retaliation for her raising concerns of FLSA violations, in retaliation for raising good-faith concerns that Defendant violated Ohio law with hiring minors, and because of her age and gender. (*Id.* at ¶ 29.) Plaintiffs also point to another older woman, Michelle Trosper, who held a supervisory role and was fired around the same time as them. (*Id.* at ¶ 30.) She was forty-six years old, and her termination came days after that of Mangus. (*Id.*) Plaintiffs note that she has filed similar charges in a lawsuit in Kentucky, where she primarily worked. (*Id.*)

## PROCEDURAL POSTURE

On December 16, 2025, Plaintiffs filed their Complaint against Defendant, bringing the following causes of action: (1) FMLA violation and retaliation, brought by both Plaintiffs; (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e, *et seq.*, brought by both Plaintiffs; (3) gender discrimination in violation of Ohio Revised Code § 4112, brought by both Plaintiffs; (4) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a), brought by both Plaintiffs; (5) age discrimination in violation of Ohio Revised Code § 4112, brought by both Plaintiffs; (6) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12102, brought by Davis; (7) disability discrimination in violation of Ohio Revised Code § 4112, brought by Davis; (8) retaliation in violation of the FLSA, brought by Mangus; and (9) violation of Ohio public policy, brought by Mangus. (Compl., Doc. 1, ¶¶ 38-87.) Defendant filed a Motion to Partially Dismiss Plaintiffs' Complaint (Doc. 13), which seeks dismissal of Count I (as asserted by Mangus), Count III, Count V, and Count VII (as asserted by both Plaintiffs), along with both

4

Plaintiffs' request for non-economic and punitive damages sought under Count IV. (Motion, Doc. 13, Pg. ID 59.) The Motion has been fully briefed. (*See* Docs. 16, 17.) Thus, the matter is ripe for review.

## LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

In the discrimination context, a plaintiff "need not . . . allege facts establishing a prima facie case of [] discrimination to survive a motion to dismiss under Rule 12(b)(6)." *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019). But, the claim must still be "plausible on its face." *Parker v. Hankook Tire Manuf. Tennessee, LP*, No. 23-5208, 2023 WL 10404971, at *3 (6th Cir. Dec. 21, 2023). A complaint has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). The prima facie elements to a discrimination claim remain factors

to consider when determining whether a complaint sufficiently states a claim. *Harmon v. Honeywell Intelligrated*, No. 1:19-CV-670, 2021 WL 2373662, at \*5 (S.D. Ohio June 10, 2021) (collecting cases). And, failing to sufficiently allege just one element of a discrimination claim can warrant dismissal if that failure renders the claim inactionable. *Towns v. Memphis/Shelby Cnty. Health Dept.*, No. 17-CV-2626, 2019 WL 639050, at \*5 (W.D. Tenn. Jan. 25, 2019) (dismissing discrimination claim for failure to state a claim where the plaintiff failed to allege an adverse employment action, making the claim inactionable).

As mentioned, Defendant moves to dismiss only some of Plaintiffs' claims. (Defendant's Motion, Doc. 13.) The Court will address each of these claims in turn.

### a. Count I – FMLA Violation and Retaliation as to Mangus

In Count One of the Complaint, Plaintiffs allege that Defendant interfered with Davis's ability to exercise her rights under FMLA and that Defendant fired Mangus in retaliation for her "administering, attempting to administer, and her association with" Davis's FMLA leave. (Compl., Doc. 1, ¶¶ 35-36.) In its Motion, Defendant attacks this claim with respect to the alleged FMLA violation against Mangus. (Motion, Doc. 13, Pg. ID 62.) Defendant argues that the Complaint fails to allege that Mangus is entitled to protections under the FMLA. (*Id.*) Specifically, Defendant states that Mangus is not an "eligible employee" under the statute because the Complaint fails to allege "how Mangus either (a) availed herself of the right protected by the FMLA or (b) opposed unlawful practice under the FMLA." (*Id.*)

Addressing the first theory, Defendant states that, while Mangus alleges retaliation from Defendant "based on her mere association with Davis," the "FMLA does

6

not support claims for third-party relief in the manner Mangus seeks." (Motion, Doc. 13, Pg. ID 63.) Defendant notes that Mangus argues, in the alternative, that she faced retaliation for her "administration and attempted processing" of the FMLA claim, but this is also insufficient for a claim under the FMLA. (*Id.*) And, regarding the second theory, Defendant asserts that Mangus fails to allege that Defendant told her to oppose Davis's exercise of her FMLA rights. (*Id.*)

Plaintiffs respond, though, by clarifying that Mangus's claim is not one of FMLA violation via association, but rather, a claim of FMLA retaliation. (Response, Doc. 16, Pg. ID 85-86.) Plaintiffs restate the allegations made in the Complaint, namely, that Defendant fired Mangus "in direct retaliation for her actions associated with the FMLA." (*Id.* at Pg. ID 86.) Put differently, Mangus's claim is not based on her association with Davis; instead, she alleges that "she was fired because of her actions in administering and standing up to Defendant's false claims that Davis'[s] FMLA application was insufficient." (*Id.*) Plaintiffs allege, in the Complaint, that Mangus reminded Defendant that she had submitted the appropriate papers for Davis's leave and pointed out to Defendant that it was mistreating the application. (*Id.*; *see also* Compl., Doc. 1, ¶¶ 19, 29, 32, 36.) And, Plaintiffs claim that the actual administration of the application and Mangus's warning to Defendant that it was mishandling the application are both protected activities under the FMLA. (*Id.* (citing 29 C.F.R. § 825.220).) Under that code section, Plaintiffs state, it is unlawful for an employer to interfere with, restrain, or deny the exercise of any rights under the FMLA and for an employer to discharge someone for opposing or complaining about any unlawful practice under the act. (*Id.* at Pg. ID 86-87

(citing 29 C.F.R. § 825.220(a)(1)-(2)).) According to Plaintiffs, Defendant both interfered with Mangus's administration of the leave and retaliated against her "for voicing the truth—that Davis'[s] application was complete and warranted FMLA leave." (*Id.* at Pg. ID 87.)

Nevertheless, Defendant maintains that Plaintiffs "mischaracterize both the nature of Mangus's allegations and the scope of the FMLA protection." (Reply, Doc. 17, Pg. ID 90.) Defendant argues that Mangus's submission of paperwork and reminder to management that it was submitted are not protected activities under the FMLA. (*Id.* at Pg. ID 91.) Rather, "the statute protects employees who exercise or attempt to exercise their own FMLA rights, and employees who oppose unlawful practices under the FMLA." (*Id.* (citing 29 U.S.C. § 2615).)

Viewing the allegations in a light most favorable to Plaintiffs, the Court is nonetheless inclined to agree with Defendant. Indeed, in order to state a claim for retaliation under the FMLA, a plaintiff "must establish that: (1) she was engaged in protected activity; (2) her employer knew she was engaged in the protected activity; (3) her employer took an adverse employment action against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 867 (6th Cir. 2023). While Mangus may have asserted that the paperwork was submitted, despite statements to the contrary, the Court is unpersuaded that this constitutes an opposition to Defendant's alleged unlawful practices under the statute. Plaintiffs have not pointed to any case law, and this Court could find none, that classifies such a statement as "opposition" or qualifying as

8

protected activity. To the extent that Mangus paints Defendant's statement as an unlawful action under the FMLA, and her statement as a complaint, courts have found that even complaints that an employer gave false information about FMLA rights were not protected activity if the error "did not prejudice the employee." *Edwards v. Dialysis Clinic, Inc.*, 423 F. Supp. 2d 789, 796 (S.D. Ohio 2006); *Glander v. NGK Spark Plugs, Inc.*, No. 11-CV-14372, 2012 WL 5828620, at *8 (E.D. Mich. Oct. 25, 2012). Similarly, the submission of the paperwork alone does not constitute opposition for purposes of the statute, at least not in this context. *See Brister v. Mich. Bell Telephone Co.*, No. 14-CV-11950, 2016 WL 74870, at *9 (E.D. Mich. Jan. 7, 2016) (no protected activity found when plaintiff did not make statements directly opposing employer's allegedly unlawful conduct under the FMLA); *cf. Brooks, et al. v. Charter Twp. of Clinton, et al.*, No. 12-CV-12880, 2015 WL 5728833 (E.D. Mich. Sept. 30, 2015) (protected activity found when plaintiff refused to participate and openly criticized employer's unlawful conduct under the FMLA). Accordingly, the Court finds that Plaintiffs have failed to allege that Mangus engaged in protected activity for the purposes of her FMLA retaliation claim.

### b. Plaintiffs' Discrimination Claims under Ohio Revised Code § 4112

Defendant next contends that Plaintiffs have failed to exhaust their administrative remedies for their state-law claims, so the claims fail as a matter of law. (Motion, Doc. 13, Pg. ID 65.) Defendant argues that the Ohio Civil Rights Commission ("OCRC") issued letters of determination to both Plaintiffs on January 15, 2026. (*Id.*) In these letters, the OCRC notified Plaintiffs that they had thirty days from the issuance of the letters to file a petition for judicial review. (*Id.*) Thus, Plaintiffs retained the right to appeal the

9

determination letters until then, and until they pursue an appeal or expressly decline to, they have failed to exhaust their administrative remedies. (*Id.*) Plaintiffs do not dispute that the OCRC letters provide this remedy, but they point out that they "dual-filed" charges of discrimination both with OCRC and the Equal Employment Opportunity Commission ("EEOC"). (Response, Doc. 16, Pg. ID 87.) To this end, Plaintiffs state that the EEOC issued Plaintiffs "right to sue" letters, attached as exhibits to their Complaint, which cannot be appealed. (*Id.* at Pg. ID 87-88.) Furthermore, Plaintiffs reiterate that Ohio Revised Code § 4112.052 allows for a private right of action but requires, as a prerequisite, the issuance of a notice of a right to sue by the OCRC, which signifies exhaustion of this administrative remedy. (*Id.*) Notably, though, the statute provides that the EEOC right to sue letter "is alone sufficient to have met the prerequisites for suit." (*Id.* at Pg. ID 88 (citing Ohio Rev. Code § 4112.052(B)(2)).) In other words, Plaintiffs need not appeal their OCRC charges if the EEOC has provided them with a right to sue letter. (*Id.*)

Indeed, § 4112.052(B)(2) states that a person may file a civil action if: (1) the person has filed a charge with the OCRC; (2) the person has filed a charge with the EEOC; and (3) the person has received a right to sue letter from the EEOC. Ohio Rev. Code § 4112.052(B)(2)(b)(i)-(iii). Here, Plaintiffs have alleged all three conditions and have provided proof of the charges and right to sue letters in their Complaint. (*See* Compl., Doc. 1, ¶ 8; *see also* Dual-Filed Charges of Discrimination, Docs. 1-2, 1-4; Right to Sue Letters, Docs. 1-3, 1-5.) In its Reply, Defendant seemingly backs down on its initial argument and instead points out that, to the extent Plaintiffs have elected to proceed in this Court, "they forfeit any attempt to continue (or re-invoke) additional state

10

administrative remedies for the same practice." (Reply, Doc. 17, Pg. ID 94.) But, Plaintiffs have not indicated that they are attempting, or plan to attempt, to seek remedies down both avenues. To that end, the Court does not find Defendant's argument persuasive. Plaintiffs have met the prerequisites of Ohio Revised Code § 4112.052 with their EEOC right to sue letters. Dismissal is inappropriate and their Ohio discrimination claims may proceed.

### c. Plaintiff's Disability Discrimination Claim under 42 U.S.C. § 12102(2)(a)

Finally, Defendant argues that Plaintiffs' request for non-economic and punitive damages under Count IV must be dismissed because such damages are unavailable under the ADEA. (Motion, Doc. 13, Pg. ID 65.) Defendant notes that Plaintiffs request "punitive damages and compensatory damages, including emotional distress," as types of relief sought. (*Id.* (citing Compl., Doc. 1, Pg. ID 13).) While Plaintiffs do not specify the claims under which each type of damages are sought, Defendant reads the Complaint as requesting non-economic and punitive damages under each count, to include Count IV, their ADEA claim. (*Id.* at Pg. ID 66.) To this end, Defendant states that "the law is clear that non-economic and punitive damages are unavailable under the ADEA." (*Id.* (collecting cases).) Plaintiffs do not address this argument in their Response. (*See generally* Response, Doc. 16.) In its Reply, Defendant argues that this non-response equates to a concession that narrows the issues and remedies in this case. (Reply, Doc. 17, Pg. ID 94.) And, it thus follows that the Court should limit Plaintiffs' emotional distress and punitive damages proof "on any non-ADEA claims to non-ADEA facts, and preclude Plaintiffs from using ADEA-based allegations as support for those categories." (*Id.* at Pg. ID 94-95

11

(citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 580 (6th Cir. 1994)).)

Indeed, a plaintiff waives opposition to an argument when he or she fails to respond to that argument in a motion to dismiss. *Resnick v. Patton*, 258 F. App'x 789, 793 n.1 (6th Cir. 2007); *see also Johnson v. Apple, Inc.*, No. 3:13-CV-204, 2014 WL 4076148, at *1 (S.D. Ohio Aug. 14, 2014). To that end, the Court finds it appropriate to dismiss Plaintiffs' request for non-economic and punitive damages as to Count IV only. However, to the extent that Defendant asks this Court to limit what allegations may be used to support other claims' non-economic and punitive damage awards, the Court finds that this request is premature. In fact, the case Defendant uses to support its duplicative-recovery argument dealt with a motion in limine before trial. *See Black*, 15 F.3d at 579-80. And, the court stated that "the question of whether damage awards are duplicative is one of fact." *Id.* at 580. Accordingly, the Court finds that limiting the allegations and facts used to support Plaintiffs' recovery of non-ADEA damages at this juncture is not appropriate. The Court thus grants Defendant's request only as to the dismissal of the non-economic and punitive damages claim for Plaintiffs' ADEA cause of action.

### CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Defendant's Motion to Dismiss (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**;

2. Count I of Plaintiffs' Complaint is **DISMISSED** as to Plaintiff Mangus only;

3. Plaintiffs' request for non-economic and punitive damages under Count IV is **DISMISSED**; and

4. The remainder of Plaintiffs' claims **SHALL PROCEED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND